UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELISSA COLON,

                Plaintiff,

v.                                               3:13-CV-1242
                                                      (GTS)
CAROLYN W. COLVIN,

                Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

LACHMAN & GORTON                        PETER A. GORTON, ESQ.,
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.          EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Melissa Colon ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) are the parties' cross-motions for judgment on the pleadings, as well as Plaintiff's reply brief, which was filed with permission of the Court. (Dkt. Nos. 15, 16, 21.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on May 11, 1968. She has earned approximately three years of college credits. Plaintiff is also certified in phlebotomy and medical billing. Her most recent full time employment was as a phlebotomist in a hospital in 2004. Since that time, Plaintiff has worked part time as a patient coordinator, wardrobe consultant and receptionist. Plaintiff has also received unemployment compensation. Generally, Plaintiff's alleged disability consists of a back and neck injury with associated chronic pain, post-concussive syndrome with associated memory loss, migraine headaches, depression, bipolar disorder and attention deficit disorder. Plaintiff's alleged disability onset date is July 16, 2004.

### B. Procedural History

On August 15, 2007, Plaintiff applied for Supplemental Security Income (SSI) and Social Security Disability Insurance benefits (SSDI). Plaintiff's SSDI application was denied because her insured status was not met and Plaintiff's SSI application was denied because the State Agency determined that she has the capacity for substantial gainful activity. Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 18, 2009, Plaintiff appeared at a hearing before the ALJ, Michal L. Lissek. (T.104-128.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on December 11, 2009. (T. 130-145.) On April 14, 2011, the Appeals Council remanded Plaintiff's case to ALJ, F. Patrick Lanagan, with instructions to give further consideration to Plaintiff's RFC, if necessary; obtain further evidence from a medical expert regarding the severity of Plaintiff's impairments; and, if warranted, obtain vocational expert evidence regarding Plaintiff's occupational base. (T. 149-153.) The Appeals Council further instructed the ALJ to associate Plaintiff's duplicate claim

for SSI, filed on January 21, 2011, and issue a new decision on the associated claims.[1] (T. 151.)

On May 17, 2012, Plaintiff appeared at a hearing before ALJ Lanagan. (T. 41-103.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on August 10, 2012. (T. 10-40.) On August 19, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

**C.     The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 16-30.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (T. 16.) Second, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, headaches, adjustment disorder, panic disorder, cognitive disorder not otherwise specified (NOS) and borderline intellectual functioning are severe impairments, but that Plaintiff's mild degenerative changes in the thoracic spine, gastroesophageal reflux disease (GERD), asthma, insomnia, history of rhinitis, an inguinal hernia, hypothyroidism, hyperlipidemia, hemorrhoids, anemia and constipation are not severe. (T. 16-20.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20-22.) The ALJ considered Listings 1.04, 12.04, 12.05 and 12.06. Fourth, the ALJ found that Plaintiff has

> the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), in that [she] is able to lift and/or carry ten pounds occasionally, stand and walk for one hour in an

---

[1] The Court's review of the administrative record reveals that Plaintiff filed duplicate claims for both SSI and SSDI in October, 2010. (T. 308-315.)

3

> eight-hour workday, and sit for one hour at a time and six hours total in an eight-hour workday. [Plaintiff] is able to occasionally reach overhead and push/pull with both upper extremities. [Plaintiff] is able to occasionally use her feet for operation of foot controls. [Plaintiff] is able to occasionally stoop and climb stairs and ramps, but she cannot climb ladders or scaffolds, balance, kneel, crouch, and crawl. [Plaintiff] must avoid exposure to unprotected heights and moving mechanical parts, and she must avoid concentrated exposure to humidity and wetness, respiratory irritants, extreme temperatures, and vibrations. Additionally, [Plaintiff] is able to understand, remember, and carry out simple tasks and make judgments on simple tasks. [Plaintiff] is able to frequently interact with the public, supervisors and co-workers, and she is able to frequently respond appropriately to usual work situations and to changes in a routine work setting.

(T. 22-29.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 29.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (T. 29-30.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to properly consider Plaintiff's ability to work consistently enough to allow for employment in significant numbers in the national economy, including factors such as absenteeism, the ability to stay on task, the ability to maintain work pace and concentration, and the ability to work without additional breaks. (Dkt. No. 15 at 12-20 [Pl.'s Mem. of Law].) Second, Plaintiff argues that, alternatively, the ALJ failed to assess Plaintiff's ability to frequently deal with others. (*Id.* at 20-23.) Third, and finally, Plaintiff argues that this Court should enter judgment of reversal with payment of benefits rather than remand for further consideration. (*Id*. at 24.)

In response, Defendant makes two arguments. First, Defendant argues that the ALJ properly considered Plaintiff's ability to remain on task, maintain concentration and pace, work

4

consistently and sustain a normal work schedule, including the proper weighing of medical evidence and the proper evaluation of Plaintiff's credibility. (Dkt. No. 16 at 7-20 [Def.'s Mem. of Law].) Second, and finally, Defendant argues that the ALJ's assessment of Plaintiff's ability to interact with others is supported by substantial evidence. (*Id.* at 20-22.)

In reply to Defendant's response, Plaintiff makes two arguments. First, Plaintiff argues that, in her response, the Defendant fails to argue that the ALJ actually considered Plaintiff's ability to work consistently, instead arguing that the medical evidence of Plaintiff's limitations as well as Plaintiff's assertions regarding those limitations are contradicted by the evidence of Plaintiff's activities of daily living. (Dkt. No. 21 at 1-2 [Pl.'s Reply Mem. of Law].) Second, Plaintiff argues that the Defendant fails to address Plaintiff's argument regarding the vocational testimony that the one job Plaintiff could do without frequent contact with others did not exist in significant numbers. (*Id*. at 3.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d

23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520,

416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Erred in Weighing the Medical Opinions of Record

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by Defendant in her memorandum of law. (*See* Dkt. No. 16 at 8-17 [Def.'s Mem. of Law.] The Court would only add the following analysis.

When deciding whether a claimant is disabled under the Social Security Act, the ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is

7

consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

8

Other providers such as chiropractors and social workers are not acceptable medical sources under 20 C.F.R. § 416.913(a), but could be considered as an "other source" under 20 C.F.R. § 416.913(d).  *Kunkel v. Comm'r of Soc. Sec.*, No. 12-CV-6478, 2013 WL 4495008, at *11 (W.D.N.Y. Aug. 20, 2013).  Accordingly, opinions from such providers could properly be considered "to show the severity of [Plaintiff's] impairment[] and how it affects [her] ability to work."  20 C.F.R. § 416.913(d).

Here, Plaintiff argues that the ALJ erred by failing to give weight to the medical opinions of record regarding her ability to work consistently, stay on task, and frequently keep up with the pace of work, her absenteeism and her need for breaks.  Specifically, Plaintiff first points to the narrative opinion of consultative examiner, Mary Ann Moore, Psy. D., to which the ALJ assigned the greatest weight, that, in part, Plaintiff's "depression and anxiety as well as borderline intellectual functioning *may* cause problems with making appropriate work decisions and maintaining a regular work schedule" and that "the results of the examination appear to be consistent with psychiatric and cognitive problems, which *may* significantly interfere with [Plaintiff's] ability to function on a daily basis."  (T. 591, 596 [emphasis added[2]].)  However, the accompanying function-by-function medical source statement provided by Dr. Moore reflects her opinion that Plaintiff is only moderately limited in her abilities to interact appropriately with the public, supervisors and co-workers and in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (T. 600.)  The Medical Source Statement

---

[2] Dr. Moore's statements are accurately quoted here.  However, the Court notes that Plaintiff misquoted those statements in her memorandum of law to reflect that Plaintiff "would" have the aforementioned problems and limitations rather than, as actually stated by Dr. Moore, Plaintiff "may" have those problems and limitations.  (*See* Dkt. No. 15 at 13 [Pl.'s Mem. of Law].)

9

form defines "moderately" as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (T. 599.) Accordingly, this opinion is consistent with the RFC determination of the ALJ that Plaintiff may frequently (from one third to two thirds of the time) interact with the public, supervisors and co-workers and respond appropriately to usual work situations and to changes in a routine work setting.

Plaintiff next interprets the opinion of State Agency medical consultant, Richard Altmansberger, M.D., to which the ALJ gave some weight, that, in part, Plaintiff is moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and in her ability to complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Dkt. No. 15 at 11 [Pl.'s Mem. of Law] [citing T. 749-50].) Plaintiff then goes on to quantify a moderate limitation as opined by Dr. Altmansberger to equal one to two absences per month and being off task ten to fifteen percent of the time. However, terms like "moderate" are inherently vague and the Commissioner has provided no specific definitions, other than to explain that "'moderately limited' means only that a claimant's capacity is impaired; it does not indicate the degree and extent of the limitation." *Reynolds v. Colvin*, No. 13-CV-396, 2014 WL 4184729, at *4, n.15 (N.D.N.Y. Aug. 21, 2014) (citing Program Operations Manual System (POMS) DI 24510.063, available at https:// secure.ssa.gov/apps10/poms.NSF/lnx/0424510063[3])). Accordingly, the ALJ's RFC determination is not inconsistent with Dr. Altmansberger's opinion.

Finally, regarding Plaintiff's limitations due to her psychiatric impairments, Plaintiff cites

---

[3]     Last visited November 17, 2014.

the opinion of her treating counselor, Rachel Hare, MSW, that Plaintiff would reasonably be expected to be absent from work more than three times per month and would have a more than 33 percent reduction in her ability to perform activities within a schedule and complete a normal work day or work week. However, the ALJ appropriately assigned very little weight to this opinion, noting that a social worker is not an acceptable medical source and that, in any event, the extreme limitations contained in Ms. Hare's opinion are not supported by her own treatment notes or the medical evidence of record. (T. 28.)

Regarding the impact of Plaintiff's physical impairments on her ability to work consistently, stay on task, and frequently keep up with the pace of work, her absenteeism and her need for breaks, Plaintiff first cites the July 2009 opinion of consultative examiner, Justine Magurno, M.D., to which the ALJ assigned the greatest weight, that, in part, "[t]here would be unpredictable marked global limitations of activities due to her migraines." (T. 606.) The ALJ acknowledged Dr. Magurno's statement as vague, but noted that it was incorporated into his RFC determination notwithstanding its absence from Dr. Magurno's medical source statement after examining Plaintiff again in December 2010, despite Plaintiff's report that she gets headaches every day. (T. 738, 742.) Specifically, Dr. Magurno's function-by-function assessment indicates limitations to occasional lifting and carrying up to ten pounds, which was adopted by the ALJ in his RFC. (T. 608.) Dr. Magurno explained that such limitations were required because pain will be markedly worsened by lifting and carrying. Accordingly, the ALJ's RFC is not inconsistent with Dr. Magurno's opinion.

Plaintiff next cites the opinions of Plaintiff's treating orthopedist, Matthew Bennett, M.D., chiropractor, Martin Brazinski, D.C., treating orthopedist, Erik Heister, D.O. and consulting orthopedic specialist, Lawrence Wiesner, D.O., all of which the ALJ correctly

11

assigned very little or no weight, for the reasons stated in Defendant's memorandum of law and the ALJ's decision. (*See* Dkt. No. 16, at 14-17 [Def.'s Mem. of Law]; T. 27-28.

For these reasons, the ALJ did not err in weighing the medical opinions of record regarding Plaintiff's ability to work consistently, stay on task, ability to frequently keep up with the pace of work, absenteeism and the need for breaks.

### B. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memorandum of law. (See Dkt. No. 16, at 18-20 [Def.'s Mem. of Law]). The Court would add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

Second, if medically determinable impairments are shown, then the

> ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id*.

Here, Plaintiff argues that the ALJ erred in assessing her credibility regarding the effect that her impairments have on her abilities. Specifically, Plaintiff alleges that her medications interfere with her ability to concentrate as they put her brain "in a fog" and cause fatigue and sleepiness. The ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible," explaining that her "significant work and educational activities after the alleged onset date detract from her credibility regarding fatigue and drowsiness related to medication." (T. 24.) The ALJ noted that Plaintiff's online course work toward earning her bachelor's degree belies her allegations of "brain fog," because, despite Plaintiff's assertion that she works at her own pace, she is nonetheless advancing through her courses. (*Id*.) Moreover, regarding Plaintiff's credibility in general, the ALJ also appropriately considered Plaintiff's testimony regarding her regular receipt of unemployment benefits throughout 2009, 2010 and 2011, "a process in which she is required to certify that she is ready, able and willing to work." (*Id.*)

In support of her argument that the ALJ erred in assessing her credibility in this regard, Plaintiff cites the treatment notes from her family practice physician, Sanjiv A. Patel, M.D., that,

in 2007, Plaintiff stopped taking certain medication because it made her drowsy, resulting in an increase of migraine headaches. (T. 575.) However, in June 2010 Plaintiff presented to Dr. Patel with concerns of weight gain and fatigue despite "exercising vigorously" and noted that the Seroquel she was taking seemed to cause drowsiness. (T. 670.) At that time, Dr. Patel noted that Plaintiff' chronic neck pain was stable. (T. 671.) Dr. Patel also noted that Plaintiff's history of headaches was stable in May 2010. (T. 673.) In July 2010 Dr. Patel noted that Plaintiff's chronic headaches were stable on Depakote and Darvocet. (T. 668-669.) Dr. Patel decreased Plaintiff's dosage of Seroquel and in October 2010, she again complained of weight gain despite her "vast efforts to exercise" and eat healthy but did not complain of fatigue or drowsiness. (T. 666). Given the reports of Plaintiff's "vast efforts" to exercise and her "vigorous" exercise, her complaints of debilitating fatigue are less than credible. Likewise, the reports of stable neck pain and headache pain contradict Plaintiff's claims of debilitating pain.

For these reasons, the ALJ did not err in his assessment of Plaintiff's credibility.

### C. Whether the ALJ's Assessment of Plaintiff's Ability to Interact With Others Is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16 at 20-22 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ erred in finding that she is able to frequently interact with the public, co-workers and supervisors. In support, Plaintiff relies on Dr. Moore's July 2009

opinion that she is moderately limited in her ability to appropriately interact with the public, supervisors and co-workers, the opinion of Dr. Altmansberger that Plaintiff could not work in a job where she would be in close contact with others on a sustained basis, and the opinion of Ms. Hare that Plaintiff has "no or very little useful ability" to interact appropriately with the general public or accept instructions and respond to criticism from supervisors. (T. 965.)

First, as indicated in Point IV.A. of this Decision and Order, the Medical Source Statement completed by Dr. Moore in July 2009 defines "moderately" as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (T. 599.) Accordingly, Dr. Moore's opinion that Plaintiff can still function satisfactorily in the area of interacting with others is not inconsistent with the ALJ's finding that Plaintiff can frequently, meaning one third to two thirds of the time, interact with others. Curiously, Plaintiff contends that because "moderately" was defined on a different form subsequently completed by Dr. Moore as "[u]nable to function 50% of the time" this Court should conclude that the ALJ erred in his conclusion that Plaintiff can frequently interact with others because "[c]ertainly, a 50 percent limitation would not allow for frequent (defined as up to 2/3) contact with others." (Dkt. No. 15, at 21 [Pl.'s Mem. of Law].) However, the converse of "unable to function 50% of the time" is that an individual is able to function the other 50 percent of the time. Consequently, Plaintiff's argument in this regard is unavailing since the ALJ's conclusion that Plaintiff can frequently interact with others is not inconsistent with either definition of the term, "moderately."

Second, as Plaintiff points out, in the narrative portion of the Mental RFC form, Dr. Altmansberger opined that Plaintiff "retains the ability to perform simple work, not in close contact with others on a sustained basis." (T. 751.) Dr. Altmansberger also found in Part I of

15

that form that Plaintiff is only moderately limited in the ability to interact with the general public. (T. 750.) Again, to be sure, as indicated in Point IV.A. of this Decision and Order "'moderately limited' means only that a claimant's capacity is impaired; it does not indicate the degree and extent of the limitation." *Reynolds v. Colvin*, 2014 WL 4184729, at *4, n.15. Consequently, the narrative portion of the RFC form can be relied upon for further explanation of the precise limitations. However, and as Defendant points out in her memorandum of law, Dr. Altmansberger's narrative opinion is not inconsistent with the ALJ's conclusion that Plaintiff can interact with others frequently, which is one third to two thirds of the time, since he stated that she cannot be in close contact with others on a sustained, or constant, basis.

Finally, as indicated in Point IV.A. of this Decision and Order, the ALJ did not err in failing to assign weight to the opinion of Ms. Hare because she is not an acceptable medical source and because her opinions of, as here, extreme limitations, are not consistent with her treatment notes or the other medical evidence of record.

For all of these reasons, the ALJ's decision that Plaintiff can frequently interact with the public, co-workers and supervisors is supported by substantial evidence.

### D. Whether the ALJ Satisfied His Burden of Proving That There Are a Significant Number of Jobs in the National Economy That Plaintiff Can Perform

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16 at 4-5 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ did not satisfy his burden at step five of the sequential

analysis to prove that there are a significant number of jobs in the national, state or regional economy that Plaintiff can perform because the vocational expert testified that there would be no jobs available if (1) Plaintiff would miss more than one to two days of work per month; (2) Plaintiff is not able to stay on task for up to 85 to 90 percent of the day; (2) Plaintiff would need even one extra 15 minute break per day; or (3) Plaintiff could not frequently keep up with the pace of work, and the vocational expert further testified that if Plaintiff cannot frequently deal with others, the only job she would be able to perform is that of an addresser, which job the vocational expert was not able to indicate existed in significant numbers in the national economy. (Dkt. No. 15 at 1, 20 [Pl.'s Mem. of Law].)

Here, the ALJ provided a hypothetical to the vocational expert, which included the abilities and restrictions set forth in his RFC determination. (T. 76-77, 79-80.) The vocational expert testified that there are jobs that exist in the national economy that are compatible with those abilities and restrictions, including that of an order clerk, new accounts clerk, and an addresser. (T. 80-81.) As indicated in Points IV.A-C of this Decision and Order, the ALJ's RFC determination is supported by substantial evidence. Consequently, the ALJ met his burden of proving that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Because the ALJ's finding at step five was based on substantial evidence and is not the product of legal error, his decision is affirmed.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

17

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 26, 2014
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge